STATE of Missouri, Respondent,

v.

Ivan VINSON, Appellant.

Ivan VINSON, Appellant,

v.

STATE of Missouri, Respondent.

No. 72609.

Supreme Court of Missouri,
en banc.

Nov. 20, 1990.

Rehearing Denied Dec. 18, 1990.

Dave Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Ivan Vinson was convicted by a jury of two counts of first degree robbery, two counts of armed criminal action, and one count of kidnapping. The trial court, Sweeney, J., sentenced Vinson to a total of thirty years' imprisonment. Judgment was entered accordingly. Vinson filed a motion to vacate the judgment pursuant to Rule 29.-15. After an evidentiary hearing, the motion court, Romines, J., denied relief and entered judgment accordingly. On consolidated appeal, the Court of Appeals, Eastern District, affirmed the judgments and transferred the appeal to this Court pursuant to Rule 83.02. Affirmed.

## I.

Vinson does not challenge the sufficiency of the evidence. The evidence shows that Vinson robbed a gas station and kidnapped a customer at gunpoint. Vinson ordered the customer to drive him to a location thirty minutes from the robbery scene, where he forced the customer to leave the car and drove away alone. The gas station attendant and the customer identified Vinson from a photo array three months later. In his direct appeal, Vinson alleges the trial court erred in failing to dismiss a venirewoman for cause, erred in denying his request for a mistrial based on a detective's alleged comment on prior crimes committed by Vinson, and erred in admitting an in-court identification by the attendant and customer. This Court finds no merit in these contentions.

■ Vinson argues that because venirewoman Anne Sebold said her husband had been murdered in the line of duty as a police officer thirteen years earlier, she should have been discharged for cause. Vinson used a peremptory challenge to remove Sebold. While failure to grant a legitimate challenge for cause constitutes reversible error, *State v. Lingar*, 726 S.W.2d 728, 734 (Mo. banc 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987), this Court finds no abuse of discretion in denying this challenge for cause. "In exercising this discretion, the decision of the trial court should rest upon the facts stated by the juror with reference to his state of mind and should not be allowed to depend upon the conclusions of the juror whether he could or would divest himself of a prejudice he admitted to exist in his mind." *State v. Lovell*, 506 S.W.2d 441, 444 (Mo. banc 1974). Nothing in the record indicates Sebold lacked impartiality, nor did she acknowledge any prejudice. Her relationship to a police officer and to a victim of a violent crime does not disqualify her, *State v. Hopkins*, 687 S.W.2d 188, 190 (Mo. banc 1985), especially in light of her assertion that she thought "justice was done" in her husband's case and that her husband's experience would not prevent her from considering objectively the evidence in this case. Vinson cites *State v. Land*, 478 S.W.2d 290 (Mo.1972), and *State v. Kayser*, 637 S.W.2d 836 (Mo.App.1982), for the proposition that the trial court cannot base its ruling on the

venirepersons' subjective claims that they will be objective. The venirepersons in those cases, unlike Sebold in this case, expressly stated a bias toward the prosecution before professing their ability to remain objective.

■ Vinson claims the trial court erred in denying his request for a mistrial based on the testimony of Detective Phillip Law during his direct examination:

Q. (By Prosecutor) What did you all do in your investigative role?

A. We investigated the particular incident that happened at [what] we call the Lindbergh Shell. During the course of that investigation we developed leads to a suspect.

[Based upon the prosecutor's assurances that the witness had been cautioned not to reveal Vinson's suspected involvement in other crimes, the court overruled Vinson's objection to questions concerning the police department's investigative methods.]

Q. (By Prosecutor) Detective, then how did you go about solving this crime?

A. Solving the entire crime?

Q. Well, you said you developed leads.

A. Correct.

Q. What did you do then in an attempt to determine the actual robber and kidnapper of the incident at the Shell station?

A. We reviewed all the circumstances, the facts that we had in the original report. We didn't have a lot of facts to go on at the time. What we did was converse with other departments that would have crimes of a similar nature.

Vinson maintains this testimony served as a comment on prior crimes committed by him. Vinson moved for a mistrial; the trial court denied the motion, and the trial court instructed the jury to disregard the testimony.

This is not a case of "extraordinary circumstances in which prejudice to [Vinson could] be removed in no other way." *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988) (*quoting*

*State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983)). The testimony that the police developed leads by contacting other unknown police departments regarding other unknown crimes committed at other unknown times did not intelligibly allude to any prior conduct by Vinson. Any conjecture by the jury that the "crimes of a similar nature" mentioned by Law involved Vinson was adequately redressed by the trial court's charge to disregard the testimony. The trial court did not abuse its discretion in preferring this remedial route over the drastic remedy of a mistrial under these circumstances. *See State v. Alexander*, 729 S.W.2d 467, 468–69 (Mo. banc 1986), and *State v. Harris*, 547 S.W.2d 473, 474–75 (Mo. banc 1977).

■ Vinson argues the trial court improperly permitted the victims to make in-court identifications of him. To prevail on this point, Vinson first must demonstrate that the investigative procedures employed by the police were impermissibly suggestive, and then that the suggestive procedures made the identification at trial unreliable. *State v. Williams*, 717 S.W.2d 561, 564 (Mo.App.1986). While "reliability is the lynch-pin in determining the admissibility of identification testimony," *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977), Vinson must clear the suggestiveness hurdle before procuring a reliability review. *See Williams*, 717 S.W.2d at 564, and *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc 1979), *appeal dismissed*, 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980). The record reveals no pretrial suggestiveness in this case. Rather, the victims testified to the objectiveness of the pretrial identification procedures. Vinson grounds this point entirely in the factors relating to reliability, which absent a showing of impermissible suggestiveness "go to the weight of testimony and not to the admissibility of the identifications." *State v. Morant*, 758 S.W.2d 110, 117–18 (Mo.App.1988).

## II.

Vinson also appeals the denial of his motion to vacate judgment and sentence

pursuant to Rule 29.15. Vinson was sentenced February 26, 1988, and timely filed his notice of appeal March 3, 1988. Vinson filed a verified *pro se* Rule 29.15 motion March 22, 1988. Counsel was appointed to represent Vinson on the motion March 23, 1988, and the trial court, pursuant to Rule 29.15(*l*), ordered the suspension of the filing of the record on appeal on April 6, 1988. The trial transcript was completed May 18, 1988, and on June 6, 1988, counsel filed an unverified amended Rule 29.15 motion. The evidentiary hearing on the amended motion was held August 17, 1988. Vinson never sought leave to verify his amended motion out of time. The motion court entered its Findings of Fact, Conclusions of Law and Order of Court September 9, 1988. The trial transcript was filed with the Court of Appeals November 21, 1988. The Court of Appeals transferred this case and *State v. White*, 798 S.W.2d 694 (Mo. banc 1990), to this Court for an examination of the issue of the time within which counsel is permitted to file an amended motion under the time constraints of Rule 29.15(f) when counsel has been appointed prior to the filing of the trial transcript on appeal. Because Vinson's failure to verify his amended Rule 29.15 motion disposes of the issues raised in the amended motion and because this Court fully addressed the timing issue in *White*, this Court chooses to assume Vinson's amended motion, had it been verified, would have been filed timely under the reasoning in *White* and to address the verification issue before reaching the merits of Vinson's verified *pro se* motion.

■ The State contends the motion court lacked jurisdiction to consider the unverified amended motion. Vinson counters by arguing that the unverified amended motion does not bar review of the issues raised in the amended motion because the issues were tried by consent under Rule 55.33(b), because the State waived any objection to defects in the amended motion by failing to object within the Rule 29.15(f) ten-day period for prosecutorial "responses" to the amended motion, because the verification of the amended motion is not

jurisdictional, because appointed counsel's duty to sift out frivolous claims fulfilled the function of the verification, and because the purpose of the verification was served when Vinson testified under oath to the facts supporting his claims.

This Court has ruled twice in recent months that the plain language of Rule 29.15 regarding the verification of Rule 29.15 motions means that an unverified motion under Rule 29.15(b) and (f) is a nullity and fails to invoke the circuit court's jurisdiction. *Malone v. State*, 798 S.W.2d 149, 150 (Mo. banc 1990); *Kilgore v. State*, 791 S.W.2d 393, 395 (Mo. banc 1990). *See also State v. Mitchell*, 789 S.W.2d 55 (Mo.App. 1990); *Reynolds v. State*, 783 S.W.2d 500 (Mo.App.1990); and *Quinn v. State*, 776 S.W.2d 916, 918 (Mo.App.1989). Rule 55.33 applies to the amendment of pleadings in civil cases. "[A]mendments of a Rule 29.15 motion are not governed by the Rules of Civil Procedure but by Rule 29.15(f)." *Kilgore*, 791 S.W.2d at 395. Vinson argues that this Court's reasoning in *Rodden v. State*, 795 S.W.2d 393 (Mo. banc 1990), which led to a holding that the lack of verification on a Rule 27.26 motion could be waived by the State by going to trial without objecting to deficiencies in the pleadings, should control this case. However, the "[a]mendment of pleadings, under [Rule 27.26], was controlled by the Rules of Civil Procedure," *Rodden*, 795 S.W.2d at 395, while the amendment of pleadings in this case is controlled by Rule 29.15(f).

■ Vinson's assertion that the State waived any objection to the lack of verification by not objecting within ten days fails because the unverified amended motion was a nullity. Vinson never invoked the ten-day limit for prosecutorial responses found in Rule 29.15(f). The prosecutor had no duty to object because "[t]he law does not require the doing of a useless act." *Townsend v. State*, 740 S.W.2d 328, 329 (Mo.App.1987). Further, Vinson's differentiation between the original *pro se* motion and the amended motion for jurisdictional purposes is contrary to this Court's holding in *Kilgore*, 791 S.W.2d 393, and *Malone*,

798 S.W.2d 149, and to the plain language of Rule 29.15(f) ("any amended motion shall be verified by movant") that requires the same verification for amended motions as that mandated for the original motion under Rule 29.15(b) ("A person seeking relief ... shall file a motion ... substantially in the form of Criminal Procedure Form 40" and Form 40 contains the space for acknowledgment and instructions to verify the motion). *See Malone*, 798 S.W.2d at 150.

■ Vinson's claim that the verification of the amended Rule 29.15 motion was satisfied by appointed counsel's sifting out of frivolous claims fails under the plain language of Rule 29.15(f) requiring that "[a]ny amended motion shall be verified by movant." As was stated in *Quinn*, 776 S.W.2d 916:

> One purpose in the prospect of prosecution for perjury is to discourage frivolous and unfounded allegations and fanciful contentions which have no factual grounds. Verification of motions by the post-conviction movant constitutes an admonition that care be taken to ensure the assertions in the motion are true.

*Id.* at 918. This Court cannot expect counsel to be all-knowing regarding the detailed facts of each case. Counsel could not state under oath that the amended motion "lists all grounds for relief known ... and acknowledg[e] ... that [waiver occurs as to] any ground for relief known to [movant] that is not listed in the motion." Rule 29.15(d). If this Court did not endorse the plain language of the verification requirements of Rule 29.15, defendants would not be subject to perjury charges based on deliberately false claims relayed to counsel and incorporated in amended Rule 29.15 motions. Vinson's final claim for avoiding the verification requirements of Rule 29.15 fails under the same plain language rationale and under the supposition that Vinson's testimony under oath is immaterial since the unverified amended motion was a nullity and failed to invoke the circuit court's jurisdiction. For these reasons, the motion court did not clearly err in refusing to grant the relief sought in Vinson's unverified amended motion.

## III.

■ A fair reading of Vinson's verified *pro se* motion leads this Court to entertain two issues on their merits: whether trial counsel was ineffective in failing to obtain and proffer evidence in support of a Sixth Amendment fair cross-section challenge to the jury panel and whether trial counsel was ineffective in failing to call two alleged alibi witnesses at trial. Appellate review of a denial of post-conviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j). The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *Day v. State*, 770 S.W.2d 692, 695–96 (Mo. banc 1989). This Court finds no such mistake or error.

■ Vinson has to prove an improper cross section by a preponderance of the evidence. Rule 29.15(h). Only two fragments of evidence surfaced at the post-conviction hearing regarding "a jury drawn from a fair cross section of the community," as mandated by the Sixth Amendment to the United States Constitution. *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696 (1975). Trial counsel remarked that research in another case suggested St. Louis County summons "a slightly disproportionate percentage of blacks for jury duty," and the record reflects that no blacks sat on the thirty-six person venire panel from which Vinson's jury was selected. However, this fails to show by a preponderance of the evidence that the venire in this case was the creature of an improper impaneling procedure in St. Louis County. Because trial counsel was not required to ask for groundless relief, *Mayo v. State*, 744 S.W.2d 837, 840 (Mo.App.1988), this argument fails.

■ Vinson's trial counsel may be found ineffective for failing to locate and call witnesses if Vinson can show "the witnesses could have been located through

reasonable investigation; they would have testified if called; and their testimony would have provided a viable defense." *Hogshooter v. State*, 681 S.W.2d 20, 21 (Mo.App.1984). Vinson asserts that Hasue Patel, the owner of an Indiana motel at which Vinson claims to have been staying on the date in question, and Kim Wilson, a woman who Vinson claims shared the motel room with him, could have provided a viable alibi defense. The record in this case shows Patel told Vinson's trial counsel he had no recollection of having seen Vinson on the date in question. Trial counsel detailed for the motion court her extraordinary efforts to locate Wilson by letters to Wilson; by telephone calls to Wilson's sister, Wilson's mother, and Wilson's mother's neighbor; and by using an investigator for the Public Defender's Office in Indiana. Because Vinson makes no showing Patel would have provided a viable defense or Wilson could be located through reasonable investigation, this argument is rejected.

The judgments are affirmed.

RENDLEN, BILLINGS and HOLSTEIN, JJ., concur.

COVINGTON, J., concurs in result in separate opinion filed.

ROBERTSON, J., concurs in result and concurs in opinion of COVINGTON, J.

BLACKMAR, C.J., concurs in part and dissents in part in separate opinion filed.

COVINGTON, Judge, concurring in result.

I concur in the result of the Court's opinion but believe that the time has come for me to address the question of verification in terms different from those upon which I previously joined the Court.

In recent cases this Court has directly addressed the problem of failure to verify a *Rule 29.15* motion. In *Kilgore v. State*, 791 S.W.2d 393 (Mo. banc 1990), no motion had been verified. Movant requested leave of this Court to sign and verify the *Rule 29.15* motion. In *Malone v. State*, 798 S.W.2d 149, 150 (Mo. banc 1990), no motion was verified. One month after evidentiary hearing movant requested leave to verify. In both *Kilgore* and *Malone* this Court held the motions nullities. The facts of the present case are distinguishable. Vinson filed a verified *pro se* motion. The trial court plainly had jurisdiction over the parties once movant filed his verified *pro se* motion. The *pro se* pleading stated a cause of action. The Court had authority to enter a judgment on the *pro se* motion. Only the amended motion remains unverified. In this regard Vinson's case resembles *State v. Oxford*, 791 S.W.2d 396, 401 (Mo. banc 1990), where defendant failed to verify the amended motion.

It is proper to address the question of failure of verification of the amended motion in the context of the purposes of the postconviction proceeding. *Rule 29.15(d)* provides that the movant "shall verify the motion, declaring that he has listed all grounds for relief known to him and acknowledging his understanding that he waives any ground for relief known to him that is not listed in the motion." *Rule 29.15(e)* then requires the Court to appoint counsel who is to prepare and file, when necessary to assert sufficient facts or additional grounds, an amended motion. Presumably for purposes identical to those of Rule *29.15(d)*, the amended motion is also to be verified by movant. *Rule 29.15(f)*. The verification requirement is an essential element of the postconviction motion. *Kilgore v. State*, 791 S.W.2d at 395. The purpose of *Rule 29.15(d)* is to "discover and adjudicate all claims for relief in a single proceeding." *Id.* The language of *Rule 29.15(k)* further supports *Kilgore's* statement of purpose by prohibiting successive motions.

Related to the purpose of the verification requirement is another of the postconviction rule's purposes—to accomplish a timely adjudication of claims. The rule serves to avoid delay in the processing of claims and to prevent litigation of stale claims. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). The limitations of verification and timeliness place an increased responsibility on movant, counsel, and the courts to

litigate claims promptly. *Sloan v. State,* 779 S.W.2d 580, 581 (Mo. banc 1989).

In the context of this case and the purposes of *Rule 29.15,* the question is thus: At what point should a court be deprived of authority to proceed with a *Rule 29.15* motion so as not to undermine the purposes of the rule? The answer must be: At such time as all claims for relief could not be discovered and adjudicated in a timely, single proceeding.

So long as a movant does not also seek to add claims to his amended motion, to permit the movant to verify the amended motion at any time prior to hearing offends neither the purpose of the time requirements nor the purpose of the verification requirements. There is no detriment to the state in preparation for hearing and no delay in the proceedings. Such a line of demarcation would continue to serve to prohibit the Court from countenancing any additional claims that movant might seek to raise after filing of the amended motion, during the hearing, or at any time subsequent. If the state should later seek to raise a claim of perjury against movant upon movant's attempt to file a successive motion, the state's claim would not have been thwarted.

I would permit a movant the formality of leave to amend to verify a motion at any time prior to hearing so long as movant seeks only to verify and not to raise additional claims. Vinson did not do so, so I would affirm the judgments of the trial courts.

To the extent I joined in this Court's earlier opinions where the Court may have invoked an underlying premise to support a holding that a trial court lacks "jurisdiction" ever to hear an unverified motion, I confess error. The question does not appear to me now as it did then. Claiming no equivalence of stature to Mr. Justice Frankfurter, I nevertheless take some solace in his words on one occasion: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Bank,* 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949) (Frankfurter, J. dissenting).

BLACKMAR, Chief Justice, concurring in part and dissenting in part.

I agree with the holding that the judgment of conviction should be affirmed. I also agree that the proceedings under the *pro se* 29.15 motion show no basis for relief, given the trial court's findings and conclusions. But I cannot agree that the Court lacked jurisdiction to consider the amended 29.15 motion. I would hold, rather, that when the state provides counsel for a postconviction movant, and that counsel fails to procure the movant's verification on an amended motion which is otherwise timely, the Court may allow the verification to be supplied at a later time.

Proceedings under Rule 29.15 are civil. It is uncommon in civil proceedings to hold that the filing of defective papers deprives the Court of jurisdiction. The usual remedy is to permit defects to be corrected by amendment. The law has been particularly intolerant of those who make no mention of a pleading defect until the trial court has ruled and then seek to disadvantage their opponents by claims of procedural defect. Rule 55.33(b). Nothing in the text of Rule 29.15 indicates that proceedings under that rule are to be treated in a way different from what is usual in civil actions. Such phrases as "a nullity," or "failed to invoke the circuit court's jurisdiction" are simply bootstrapping. The Court could perfectly well allow the verification to be supplied when the defect is pointed out. This would allow the state to enjoy all of the real or imagined benefits of verification.

Judge Covington's opinion is fine so far as it goes but I have trouble seeing the delict the movant was guilty of. The state was willing to proceed with the hearing on the basis of the unverified, amended motion. Rather than holding that the proceedings on the amended motion were a nullity, I would offer the movant the opportunity to supply the missing verification.

Some of the opinions on this subject suggest that the verification requirement serves an expediting purpose. I cannot see

that it expedites the proceedings in any way. There rather will be procedural hassles and a ping-pong match between state and federal courts, if this movant is obliged to pursue other postconviction remedies. I believe that any diligent judge who comes upon this record will be offended when the state seeks to default a litigant because of a manifest procedural omission by counsel required to be furnished him by the state, to the point of holding that there was cause for the defendant's procedural default.

I would affirm the judgment of conviction. If the Court were willing to reach the merits of the 29.15 action, I might very probably vote to affirm the judgment in its entirety. But I have not examined the merits of the points based on the amended motion 29.15, and at this point can only dissent from this Court's failure to review the matters raised in the amended motion.

I again express the hope that I have expressed in other cases, that any other judge who has the occasion to deal with this record will resort to the evidentiary hearing, at which the movant, in the amended motion, had the opportunity to present all points which occurred to him or his counsel. I hope that future judges will defer to the supported findings of Judge Romines, so that duplicating hearings are not necessary.